UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEROY SHULL,

        Plaintiff,                                Case No. 20-11299
vs.                                                    HON. MARK A. GOLDSMITH

DYNAMIC TRANSPORTATION, LLC,
et al.,

        Defendants.
_____/

**OPINION & ORDER
DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION (Dkt. 11)**

      Plaintiff Leroy Shull filed a complaint against his former employer, Defendant Dynamic Transportation, LLC, and its owner, Defendant Joseph Johnson (Dkt. 1). Shull alleges that he was injured while driving a semi-truck during the course of his employment, and that Defendants terminated him because he exercised his right to seek medical services for a work-related injury under the Michigan Workers Disability Compensation Act, Mich. Comp. Laws § 418.301 ("MWDCA"). See Compl. ¶¶ 29-36 (Dkt. 1). He also alleges that the termination violated public policy, because it was retaliation for refusing Defendants' illicit offer to compensate him in exchange for forgoing a workers compensation claim. Id. ¶¶ 37-41.

      Defendants have moved under Federal Rule of Civil Procedure 12(b)(1) to dismiss the case for lack of subject matter jurisdiction because, they allege, his claim does not satisfy the $75,000 amount-in-controversy requirement imposed by 28 U.S.C. § 1332(a). For the reasons that follow, the motion is denied.

1

## I. LEGAL STANDARD

Charvat v. GVN Michigan Inc. provides the applicable legal standard for determining diversity jurisdiction where the amount in controversy is contested:

> The party opposing dismissal has the burden of proving subject matter jurisdiction. . . .
>
> The diversity statute requires that the matter in controversy exceed the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). To defeat diversity jurisdiction, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount. . . . Generally, the amount claimed by the plaintiff in the complaint rules, as long as claimed in good faith, and events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction. . . . Dismissal is proper, however, if the amount alleged in the complaint was never recoverable in the first instance.

561 F.3d 623, 628 (6th Cir. 2009) (some punctuation and citations omitted). With that said, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996) (citation omitted). Furthermore, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

An employee discharged in retaliation for exercising rights under the MWDCA, including an at-will employee such as Shull, may recover for lost wages, back pay and front pay, and mental or emotional distress damages. Phillips v. Butterball Farms Co., Inc., 531 N.W.2d 144, 144-145 (Mich. 1995). Front pay is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." Szeinbach v. Ohio State Univ., 820 F.3d 814, 820 (6th Cir. 2016) (some punctuation and citation omitted). Back pay is money awarded for lost compensation during the period between the discriminatory conduct and the date on which damages are determined. Id. at 820-821.

2

## II.   DISCUSSION

**A.  Back Pay**

Shull calculates his backpay at $90,294.  Resp. at 3-4 (Dkt. 12).  He anticipates a two-year gap between his March 6, 2020 discharge and the date judgment is rendered in this case.  Although his trial date has not yet been scheduled, Shull's estimate of the timing is reasonable.  To establish his lost wages, he uses a figure of $95,147 per year, the amount he earned in 2019.  See Pl. W-2 Earnings, Ex. A to Resp. (Dkt. 12-1).  Multiplied by two years, his back pay, less mitigation, would be $190,294.  From this number, he subtracts $100,000 in mitigation, based on new employment that he expects will yield $50,000 per year, for a net $90,294 back pay claim.  Resp. at 3-4; see also Shull Aff. (Dkt. 14).

Defendants argue that Shull has failed to mitigate, based on Defendants' assertion that they performed "a quick search on Indeed.com" and found jobs that would pay better than the job Shull in fact received.  Reply at 3.  Defendants cite Chisolm v. Mich. AFSCME Council 25, 218 F. Supp. 2d 855, 863 (E.D. Mich. 2002), for the proposition that a plaintiff may not remain underemployed in order to maximize recoverable damages in the form of lost wages.   However, that same opinion held that the question of whether an employee was reasonable in not seeking or accepting particular employment is a question for the jury, precluding summary judgment.  Id.

Although RMI Titanium instructs that a genuinely disputed fact question does not preclude a finding that the Court lacks jurisdiction, Defendants have not presented enough evidence to show that Shull's jurisdictional allegations were made in bad faith or that the estimate provided in his response brief is inaccurate or unreasonable.  Defendants' mere identification of jobs that might pay more than Shull is earning does not show that he is remaining underemployed to increase damages.

3

Defendants also argue that Shull failed to provide documentation of his new wages at his new employment and that his wages may "greatly exceed his low estimate of $50,000." Reply at 3. However, Shull has submitted an affidavit correcting this supposed deficiency, and Defendants have provided no evidence tending to prove that Shull's earnings will exceed his estimate.

In sum, Shull's $90,294 estimate for back pay is properly supported for jurisdictional purposes. Without significant countervailing evidence, the Court cannot find, to a legal certainty, that the amount in controversy is not more than $75,000.

**B. Front Pay**

Front pay may be awarded if the trial judge determines that reinstatement is impractical or inadequate. Davis v. Combustion Eng'g, Inc., 742 F.2d 916, 923 (6th Cir. 1984). The parties seem to agree the reinstatement is unlikely to serve as a viable remedy in this case. See Mot. at 8 (Dkt. 11); Resp. at 4. Based on the gap between Shull's current salary and his earnings while working for Defendants, he claims he is entitled to $45,147 per year awarded. Resp. at 5.

In their reply, Defendants argue that an award of front pay is unwarranted, largely because Shull has found work. Reply at 4. However, as Defendants themselves note, front pay is designed "to assist the discharged employee during the transition to new employment of equal or similar status." Reply at 4 (citing Stafford v. Elect. Data Sys. Corp., 749 F. Supp. 781, 790 (E.D. Mich. 1990)). Because of the salary discrepancy, Shull has not yet attained new employment of equal or similar status.

As Stafford illustrates, determining entitlement to front pay requires courts to consider a wide range of facts, and in some cases even requires courts to retain jurisdiction to monitor a plaintiff's mitigation efforts long after trial. 749 F. Supp. at 790-792; see also Killian v. Yorozu Automotive Tenn., Inc., 454 F.3d 549, 558 (6th Cir. 2006) (describing five factors courts must

4

consider). Depending on the reasons why Shull has not obtained a higher-paying job, he may or may not be entitled to front pay. But based on his allegations, he has reasonably placed in controversy a substantial sum of money relative to the $75,000 jurisdictional threshold, and Defendants have not provided enough evidence to rebut his allegations. Once again, the Court cannot find, to a legal certainty, that the amount in controversy is below the threshold.

### C. Other Damages

Shull seeks other damages including compensatory damages for medical bills and diminishment of benefits and emotional damages. Defendants correctly observe that Shull has failed to provide a concrete dollar value to the medical bills. However, his claim reaches the jurisdictional minimum regardless.

Defendants argue that Shull's claim for emotional damages is based on Shull's allegation that he was terminated after his accident and injury. Reply at 6. Defendants argue that Shull could not have suffered emotional damages attributable to wrongful discharge, because he was terminated for lawful reasons. Id. In support of this argument they cite "[t]he uncontroverted Affidavit of Joel Hoover, General Manager for Dynamic." Id. (citing Hoover Aff., Ex. A to Mot. (Dkt. 11-1)). However, the basis of the decision to terminate Shull is at the heart of the dispute, and one affidavit cannot, as Defendants assert, satisfy to a legal certainty that Defendants' position is correct. Furthermore, the argument bears only a tenuous relationship to the question of whether the damages from any emotional harm to Shull help him satisfy the jurisdictional minimum. Defendants' real point is that they do not bear legal responsibility for any harm to him, a matter not properly before the Court on this motion.

As noted above, Phillips makes clear that claims for MWDCA retaliation may result in the award of emotional damages. Whether Shull can prove such damages is another question, but not a question that can be resolved at this stage.

### D. Jurisdictional Discovery

It their reply, Defendants, for the first time, request limited discovery as an alternative to dismissal. In some cases, "discovery is permissible, and may even be mandated, before the question of jurisdiction can be resolved." Crestmark Bank v. Goldleaf Fin. Sols., Inc., No. 07-12841, 2007 WL 2953178, at *1 (E.D. Mich. Oct. 9, 2007). However, the Court is satisfied that it has jurisdiction, and limited discovery it not necessary.

### III. CONCLUSION

Defendants' motion to dismiss (Dkt. 8) is denied.

SO ORDERED.

Dated: January 29, 2021  s/Mark A. Goldsmith
 Detroit, Michigan  MARK A. GOLDSMITH
  United States District Judge